1   Richard D. McCune (SBN 132124)
    rdm@mccunewright.com
2   David C. Wright (SBN 177468)
    dcw@mccunewright.com
3   James G. Perry (SBN 281356)
    jgp@mccunewright.com
4   Steven A. Haskins (SBN 238865)
    sah@mccunewright.com
5   Sandy G. Gonzalez (SBN 330541)
    sgg@mccunewright.com
6   **MCCUNE WRIGHT AREVALO, LLP**
    3281 Guasti Road, Suite 100
7   Ontario, California 91761
    Telephone: (909) 557-1250
8   Facsimile: (909) 557-1275

9   *Counsel for Plaintiff Richard Pallack*

10

11                  **UNITED STATES DISTRICT COURT**

12                  **CENTRAL DISTRICT OF CALIFORNIA**

13

14

15   RICHARD PALLACK,                      Case No. 8:21-cv-00139-JLS-KESx

16              Plaintiff,                  Hon. Josephine L. Staton

17   vs.
                                            **FIRST AMENDED COMPLAINT
18   LIFE IS AMAZING, LLC, a               FOR DAMAGES:**
19   California Limited Liability
     Company; DORAN ANDRY, an               1. Violation of HOEPA (15 U.S.C.
20   individual; GEORG BRUNO                   §1639, et seq.);
     EHLERT, an individual; ALDAN           2. Fraud;
21   MIKE SOON, an individual; and         3. Breach of Fiduciary Duty;
     ASHWOOD TD SERVICES LLC,               4. Violation of California Usury Law;
22   a California Limited Liability         5. Unfair Business Practices
23   Company,                                 (Bus. & Prof. Code, §17200 et seq.)
                                               and
24              Defendants.                 6. Negligent Misrepresentation

25                                          **DEMAND FOR JURY TRIAL**

26

27

28

TABLE OF CONTENTS

*Page*

I    JURISDICTION AND VENUE ......................................................... 1

II   PARTIES....................................................................................... 1

III  GENERAL ALLEGATIONS ........................................................ 3

     A.   Defendants and Participants' Relationships to Each Other ............... 3

     B.   Defendants' Unlawful Actions Toward Plaintiff.............................. 4

     C.   Similar Incidents Involving Defendants ............................................ 15

IV   DEFENDANTS' FINANCIAL FRAUD MACHINE ................................. 17

     A.   Plaintiff Was Directly and Proximately Harmed as A Result of
          Defendants and Participants' Unlawful Acts in Furtherance of the
          Scheme ................................................................................ 18

     B.   The Components of the Scheme (Enterprise, Associated-in-Fact).... 19

V    THEORIES OF VICARIOUS LIABILITY................................................. 22

     A.   Defendants and Participants Aided and Abetted Each Other ........... 22

     B.   Defendants Acted in Concert ............................................................ 25

     C.   Life Is Amazing Is Liable Under the Doctrine of Respondeat
          Superior.............................................................................. 25

     D.   Defendants Conspired to Commit Unlawful Acts ........................... 26

VI   CAUSES OF ACTION ................................................................. 27

          COUNT I:   VIOLATION OF THE HOME OWNERSHIP AND
                     EQUITY PROTECTION ACT ("HOEPA") ............... 27

          COUNT II:  FRAUD ......................................................... 32

          COUNT III: BREACH OF FIDUCIARY DUTY ......................... 34

          COUNT IV: VIOLATION OF CALIFORNIA USURY LAW........ 36

          COUNT V:  VIOLATIONS OF CALIFORNIA UNFAIR
                     COMPETITION LAW................................................. 37

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

TABLE OF CONTENTS (cont.)

*Page*

COUNT VI: NEGLIGENT MISREPRESENTATION ....................39

VII     PRAYER FOR RELIEF .............................................................41

DEMAND FOR JURY TRIAL .............................................................42

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

Plaintiff RICHARD PALLACK complains and alleges against Defendants, and each of them, as follows:

## I        JURISDICTION AND VENUE

1.        Jurisdiction of this Court exists pursuant to 15 U.S.C. § 1640(e) as to claims under the Homeownership and Equity Protection Act of 1994 ("HOEPA") and the Truth in Lending Act ("TILA") and pursuant to 28 U.S.C. § 1367(a) for the claims asserted under California law. This Court has jurisdiction to render the declaratory judgment Plaintiff seeks pursuant to 28 U.S.C. § 2201.

2.        Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b) in that the notes and trust deeds that are the subject of this action were signed in Los Angeles County and relate to the Property which is located in Los Angeles County.

## II        PARTIES

3.        Plaintiff RICHARD PALLACK is, and at all relevant times herein was, an individual, with his principal place of residence located at 4136 Davana Road, Los Angeles, California. At all times relevant to this Complaint, Plaintiff owned the residential property located at 4136 Davana Road, Los Angeles, California (hereinafter the "Property").

4.        Defendant LIFE IS AMAZING, LLC ("Life Is Amazing"), is a California limited liability company, with its principal place of business located at 4209 Seashore Drive, Newport Beach, California 92663. Life Is Amazing was formed on or about July 17, 2017. Life Is Amazing is not licensed as a broker or lender.

5.        Defendant DORAN ANDRY ("Andry") is, and at all relevant times herein was, a resident of the County of Orange, State of California. Andry owns, operates, and exclusively controls Life Is Amazing and is the sole "manager" of Life Is Amazing. Andry is not licensed as a broker or lender.

6.        Defendant GEORG BRUNO EHLERT ("Ehlert") is or was residing in Orange, California. Ehlert's real estate license was suspended indefinitely on

1  February 22, 2010. Ehlert is a licensed notary with a listed address of 321 N. Pass
2  Ave. # 201, Burbank, California 91505. The listed address is a commercial postal
3  business. Plaintiff alleges that Ehlert, at all relevant times, was an agent, servant, and
4  employee of, and with express or implied knowledge, permission, and consent of Life
5  Is Amazing and Andry, acted on behalf of Life Is Amazing and Andry.

6      7.    Defendant ALDAN MIKE SOON, also known as Mike Soon and
7  Michael Soon and doing business as Michael Soon and Associates ("Soon"), is a real
8  estate broker, residing in Huntington Beach, California 92648. Michael Soon and
9  Associates represented its business address as 800 Newport Center Drive, Unit 150,
10  Newport Beach, California 92660 in October 2018 and then 321 N. Pass Ave. # 201,
11  Burbank, California 91505 as of March 2019. Soon was disciplined by an
12  administrative law judge in 1995 for permitting an unlicensed employee to engage in
13  real estate services that required a broker's license under California law.[1] Soon used
14  Michael Soon and Associates as a d.b.a. therein.

15      8.    Defendant ASHWOOD TD SERVICES, LLC ("Ashwood"), is a
16  California Limited Liability Company, with its principal place of business located at
17  2345 Ashwood Pl., Paso Robles, CA 93446. Ashwood claims to provide foreclosure
18  and reconveyance services. Per the California Secretary of State's business search
19  website, Ashwood was registered on October 17, 2019. Jeffrey Max Pardee is
20  Ashwood's "managing member" as of March 2021. Christopher Loria is Ashwood's
21  Trustee's Sales Officer and was the "managing member" as recently as February
22  2020. At all relevant times herein, Loria acted as an agent, employee, and officer for
23  Ashwood. Loria worked for Ress Financial Corporation ("Ress") from at least 1996
24  until at least June 27, 2019.

25

26

27  [1] *See* In the Matter of the Accusation of Sylvia Vega and Aldan Mike Soon, No. H-
   3084 SAC, available at https://www2.dre.ca.gov/hearingfiles/H03084SAC_P.pdf
28  [last visited July 27, 2021].

1

2    ### III    GENERAL ALLEGATIONS

3    9.    Plaintiff incorporates by reference each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

4    A.    **Defendants and Participants' Relationships to Each Other**

5    10.    Andry, Soon, and Michael Craig, each calling themselves a "founder," formed Private Loan Financial, Inc. ("PLF") on or about January 23, 2018. PLF is licensed through the California Department of Real Estate with a license expiration date of January 22, 2022. PLF's mailing address is 4209 Seashore Drive, Newport Beach, California 92660. PLF's main office address is 120 Tustin Ave., Ste. C1204, Newport Beach, California 92663. The main office address is the same as the address for Abbey Road Farming, LLC, a company Andry owns, operates, and/or manages.

6

7

8

9

10

11

12    11.    In October 2018, Life Is Amazing extended a mortgage loan to a borrower, where Michael Soon and Associates served as the trustee ("2018-01 Nonparty Loan"). On June 26, 2020, Michael Soon and Associates was substituted as trustee for Ashwood. Andry personally signed the recorded Substitution of Trustee on Life Is Amazing's behalf. Ehlert notarized the substitution document. On December 28, 2020, Loria, Ashwood's "Trustee's Sale Officer," recorded a notice of trustee's sale. Timothy McFarlin, the named partner of McFarlin LLP, initially represented Life Is Amazing in January 2021 and continued to do so until on or about June 9, 2021. McFarlin initially represented the borrower as well, but currently purports not to do so.

13

14

15

16

17

18

19

20

21

22    12.    On or about May 2019, McFarlin LLP began representing Life Is Amazing and Andry in the matter 19SMCV01175 in Los Angeles County Superior Court ("2018-02 Nonparty Loan"). On May 13, 2019, McFarlin emailed plaintiff's counsel a payoff demand on Life Is Amazing's behalf. In the same matter, Jarrod Nakano of McFarlin LLP, on August 26, 2019, submitted a declaration in support of Defendant Doran Andry and Life Is Amazing, LLC's Motion to Dismiss. Carrington

23

24

25

26

27

28

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

Financial Services, LLC, ("Carrington") acted as trustee in this matter and initiated foreclosure proceedings on or about April 2019 on this particular loan.

13.    McFarlin LLP (McFarlin and Nakano) has represented Plaintiffs in lawsuits against Carrington since at least June 2019.

14.    Loria, as an agent of Ress, was the trustee in many other suspicious transactions.[2]

15.    In October 2019, Life Is Amazing extended a loan to a borrower, where Ress served as the trustee ("2019 Nonparty Loan"). Ehlert notarized a "modification of note and deed of trust" on August 13, 2019. On October 3, 2019, Andry personally signed the (same) "modification of note and deed of trust" as Life Is Amazing's "lender" and "President." Ehlert further notarized related documents on October 19, 2019, and June 26, 2020 (substitution). On June 26, 2020, Ress was substituted as trustee for Ashwood. Andry personally signed the recorded Substitution of Trustee on Life Is Amazing's behalf. On July 22, 2020, Loria, Ashwood's "Trustee's Sale Officer," filed a notice of default and election to sell. On October 21, 2020, Loria filed a notice of trustee's sale and relied upon a "Beneficiary's Declaration of Compliance" Ehlert had earlier completed. In the declaration, Ehlert, under penalty of perjury, declared that he was the "Beneficiary or the Mortgage Servicer for the Beneficiary" and further identified himself as "servicer" for "Life Is Amazing, LLC."

B.    **Defendants' Unlawful Actions Toward Plaintiff**

16.    In the fall of 2018, Plaintiff arranged for a second trust deed loan on his personal residence. When the loan was ready to close, it was discovered that earlier in 2018, the California Franchise Tax Board ("FTB") had placed a lien on the property for approximately $248,000. The lender refused to close the loan.

---

[2] *See, e.g.,* http://whathappenedtothemoney.blogspot.com/2010/02/is-anyone-reading-this.html [last visited July 17, 2021].

17.    After Plaintiff's refinancing efforts were unsuccessful, he was contacted out of the blue by two individuals, Soon and Michael Craig ("Craig"), representing themselves as mortgage brokers. Soon and Craig indicated that they were aware of the FTB lien, and that they could provide a second loan notwithstanding the FTB lien. When Plaintiff indicated interest in a potential transaction, Soon and Craig told Plaintiff that Ehlert would negotiate the transaction.

18.    Ehlert represented to Plaintiff that Ehlert had an unnamed associate who would get the FTB lien removed because it was past the statute of limitations, representing that his associate had experience in successfully removing FTB liens of this nature. Ehlert represented that the unnamed individual had personally saved Ehlert $300,000 from the FTB. Ehlert further represented that within six months, he would be able to arrange for Plaintiff a conventional new first level loan, which would include the amount of the second at the low current rates, or a new second loan with an interest rate of about 10% and low or no points. However, to bridge the time period until Ehlert's associate could supposedly arrange removal of the FTB lien, Ehlert would arrange a second loan in the amount of $250,000, with an interest rate of 17.99%, plus 15 points in the amount of $37,500, plus certain additional costs and fees. Life Is Amazing was to make the loan. The Truth in Lending Disclosures stated the APR to be 55.579%, the Finance Charge to be $67,146.55, and the Balloon Payment, due May 1, 2019, was to be $253,747.92.

19.    In October 2018, relying on Ehlert's representations, Plaintiff signed a promissory note and trust deed in favor of Mike Soon and Associates as Trustee and Life Is Amazing as Note Holder and Beneficiary. (*See* Exh. A, incorporated by reference.) Stonegate Escrow facilitated the escrow process. E. Alex Dominquez was the escrow officer. The original financial documents, including all escrow documents, do not list Life Is Amazing anywhere. Rather, Michael Soon and Associates is listed as both lender *and* broker.

20.    The note called for monthly payments from October 2018 through March 2019, when the balance would come due. Plaintiff timely made all payments during this time period. Plaintiff mailed the mortgage payments, in the form of a check, to Life Is Amazing at 4209 Seashore Drive, Newport Beach, California 92663. Plaintiff further communicated on multiple occasions during this time with Ehlert, who repeatedly represented to Plaintiff that Ehlert would have his associate get the FTB lien removed and would arrange for a conventional loan. In particular, in March 2019, Ehlert made representations that he would be able to arrange a new loan.

21.    Prior to the due date for the balance of the first six-month loan, Ehlert stated that Plaintiff would have to renew the loan, again at an interest rate of 17.99%, points of $10,000, additional costs and fees, and an immediate payment of $25,000. Ehlert represented to Plaintiff that within six months he would arrange a new conventional loan. The six-month promise was an important component, as Plaintiff had an option to extend the first loan three months and avoid finance costs on a new loan. In reliance on Ehlert's representations, Plaintiff made the $25,000 payment, then signed the second note and trust deed in favor of Life Is Amazing, running from March 2019 to October 1, 2019, for the principal amount of $225,000 bearing interest at 17.99% and points of $10,000, plus related costs and fees. The Truth in Lending Disclosures stated the APR to be 31.647%, the Finance Charge to be $38,459.84, and the amount that would be due and owing at the end of the six-month loan to be $228,373.13.

22.    From March 2019 through September 30, 2019, Plaintiff made all monthly payments required by the note. Plaintiff mailed his payment checks to Life Is Amazing at 4209 Seashore Drive, Newport Beach, California 92663. Also, during this time period, Ehlert made multiple representations regarding his ability to obtain a conventional loan for Plaintiff and described in some detail his supposed efforts to work with investors to put the loan together. For example, in August 2019, Ehlert

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

sent Plaintiff an email quoting conventional loan rates in the 5% to 6% range that he was "working on."

23.    Plaintiff had a written option to extend the due date on the loan by 90 days. Ehlert, however, advised Plaintiff not to exercise the option because Ehlert would be providing a conventional loan to pay off the amount due to Life Is Amazing. In reliance on Ehlert's representations, Plaintiff chose not to exercise the 90-day extension.

24.    Following the October 1, 2019, due date of the March 2019 note, Ehlert assured Plaintiff that he would "work out" any unpaid interest owed to Life Is Amazing while Ehlert was shopping Plaintiff's loan, and that Life Is Amazing "let" Ehlert handle all these issues. From October 2019 through February 2020, Ehlert made further representations about working on securing a new loan for Plaintiff and discussing the matter with other lenders. Ehlert, however, failed to deliver any proposals and stopped returning Plaintiff's calls and text messages until September 2020.

25.    On September 1, 2020, Ehlert called Plaintiff and, in an abusive manner, demanded that Plaintiff immediately sign a new note increasing the loan's principal amount from $225,000 to $318,000, including $29,000 in "loan extension points," with interest at the rate of 17.99% and payments over the next year of approximately $57,000. Ehlert threatened immediate foreclosure if Plaintiff did not agree. Plaintiff requested the opportunity to review the calculations and read the documents, but Ehlert refused. Ehlert contended there was nothing to read and insisted that Plaintiff either sign the modification or they would foreclose on his home.

26.    Ehlert also communicated as much through email. In a September 1, 2020 email, Ehlert begins with the statement: "Attached is the balance due to *us* including payment for September 2020." (Emphasis added.) Later in the email, Ehlert states, "You made a commitment to *us*" and "You need to start making payments to *us* every month." (Emphasis added.) In the same email, Ehlert stressed how "*we* did

-7-

1   our part and funded the loan" and threatened "the property being foreclosed upon,"

2   adding that "all I can really offer you is to roll everything you owe *us* into a loan

3   modification and have you start making payments again on both loans with the idea

4   of refinancing you in the future." (Emphasis added.)

5       27.   Ehlert spoke in the same collective fashion in his text messages to

6   Plaintiff. For example, Ehlert, at one point, stated "*We* would prefer to have the

7   money back and re Loan [sic] it." (Emphasis added.)

8       28.   During *many* other emails and text messages, Ehlert referred to the

9   beneficiary of the loan not as the lender or Life Is Amazing, but as the "investor"

10  (singular). Further, the only pronouns used in referring to the "investor" were "he"

11  and "him."

12      29.   After entering into the two notes and trust deeds with Life Is Amazing,

13  Plaintiff attempted to mitigate his damages by finding a conventional loan. However,

14  because the FTB lien was still in place, and because Defendants had already recorded

15  their additional notes and trust against the Property, Plaintiff could not obtain a

16  conventional loan. Plaintiff also believed that, in exchange for the tens of thousands

17  of dollars he had paid to Soon and Life Is Amazing, they were obligated to and would

18  find him conventional financing. Instead, in the middle of the COVID pandemic,

19  Defendants chose to file a Notice of Default ("NOD") and seek nonjudicial

20  foreclosure of Plaintiff's home.

21      30.   On September 4, 2020, Ehlert signed a "Beneficiary's Declaration of

22  Compliance" in support of the first NOD. On the same date, Andry (acting on behalf

23  of Life Is Amazing) substituted Ashwood in for Michael Soon and Associates as

24  trustee on the deed of trust, an act Ehlert personally notarized. At the time Andry

25  signed the Substitution of Trustee on behalf of Life Is Amazing, he and Life Is

26  Amazing owed Plaintiff a duty of care pursuant to California Civil Code § 2924.17(a)

27  and (b), to review competent and reliable evidence substantiating the borrower's

28  default and their right to foreclose.

-8-

31.    Loria, as Ashwood's Trustee's Sale Officer, recorded the first NOD on September 9, 2020, and subsequently served Plaintiff with a copy of the NOD. Loria and Ashwood also should have ensured that the NOD was accurate and complete and supported by competent and reliable evidence as a neutral dual-agent for both parties, but there is no indication that either did so given the circumstances. Ashwood did not include with the NOD a notification of Plaintiff's rights under Fair Dept Collection Practices Act ("FDCPA"). *See* 15 U.S.C. § 1692g(a). For example, Ashwood did not inform Plaintiff of his right to dispute "the validity of the debt" within thirty days of the notice or that Plaintiff was entitled to "verification of the debt or judgment" if he notified Ashwood in writing of the dispute within thirty days of the notice. At all relevant times, Ashwood acted as a debt collector. In every email Loria sent to Plaintiff in September 2020, Loria stated: "COLLECTION DISCLOSURE," "This communication is from a professional debt collection agency. This is an attempt to collect a debt; *any information obtained will be used for that purpose*." (Emphasis added.)

32.    Despite Ashwood's failure to inform Plaintiff of his rights under the FDCPA, Plaintiff, on October 6, 2020, specifically informed Loria that he was "disputing the validity of" his debt, "request[ing] the name and address of the original creditor," and "requesting the name and address of the current creditor." Ashwood did not "cease collection of the debt"; rather Loria, on October 8, 2020, specifically told Plaintiff that "[t]his request and all other requests must be directed to: Jarrod Y. Nakano."

33.    The specific attorney referenced in the October 8, 2020, email to Plaintiff was Jarrod Nakano, Esq., jarrod@mcfarlinlaw.com, 4 Park Place, Suite 1025, Irvine, California 92614, which is the office of McFarlin LLP. McFarlin LLP, through either McFarlin and/or Nakano, has represented Life Is Amazing in multiple lawsuits from at least May 2019 through the present.

34.    Prior to this lawsuit, no Defendant advised Plaintiff that McFarlin LLP was representing Life Is Amazing, Andry, Ehlert, and/or Ashwood. And Nakano never advised Plaintiff in his extensive October 23, 2020, response that McFarlin LLP represented Life Is Amazing, Andry, and/or Ehlert. The closest Nakano came to informing Plaintiff of his relationship with any of the parties was using the word "us" while scolding Plaintiff—"It is surprising that you are questioning the validity of the loan you have with us . . . ."

35.    On October 21, 2020, Ehlert signed his second declaration in support of NOD. The declaration, signed under penalty of perjury, identified Ehlert as "an agent or employee of the mortgage servicer," Life Is Amazing. Below Ehlert's signature on the declaration is the designation "Mortgage Servicer." Life Is Amazing was identified as the "servicer" on October 12, 2018, and remained in that capacity throughout the parties' relationship. On October 21, 2020, Loria and Ashwood recorded the second NOD. Loria and Ashwood were again obligated under California Civil Code § 2924.17(a) to ensure the NOD was "accurate and complete and supported by competent and reliable evidence" as a neutral dual-agent for both parties. Loria and Ashwood stated the amount due was $318,785.66. This time, however, Loria, for the first time, attached a "Fair Debt Collection Practices Act Notice." On the same day, Ashwood also filed a notice of rescission as to the September 8, 2020, NOD.

36.    On December 30, 2020, Plaintiff received a voicemail from an unrecognized number. In the voicemail, the person claimed to be from the "Hope Foundation" and said it could assist Plaintiff with keeping his home. Plaintiff called the number and spoke with a "representative" of the "Hope Foundation" who said that Plaintiff needed to speak with an "agent" or the like to get more information. The representative said that this person would call Plaintiff shortly. Roughly thirty minutes later, Plaintiff received a phone call from an individual with the "Hope Foundation" who explained that Plaintiff ultimately would need to speak with an

-10-

1  attorney and provided the name Timothy McFarlin. Plaintiff has received, and

2  continues to receive, numerous calls and voicemail messages from the Hope

3  Foundation.

4        37.    In late 2020 or early 2021, Plaintiff received an "Auction Postponement

5  Alert" from Timothy McFarlin of McFarlin LLP. (*See* Exh. B, incorporated by

6  reference.) McFarlin represented himself as a "Consumer Protection Attorney" and

7  suggested in the "notification" that Plaintiff may have certain causes of action against

8  "Life Is Amazing LLC," such as "Misrepresentations," "Wrongful Foreclosure," and

9  "Unlawful Business Practices." (*Id*.) More importantly, McFarlin stated there was an

10  "auction date," yet Ashwood had not filed the notice of sale. Nowhere in this

11  document does McFarlin notify Plaintiff that he and his firm had been or were

12  actively representing Life Is Amazing. (*Id*.) Nor did McFarlin notify Plaintiff that

13  Life Is Amazing, Andry, and Ehlert had already retained him as an attorney. (*Id*.)

14        38.    On January 13, 2021, Plaintiff retained attorney Robert S. Green to

15  represent him.

16        39.    On January 20, 2021, Andry sent Plaintiff a text message that stated:

17  "Rick[.] This is Dorian Andry[,] the owner of Life Is Amazing LL[C] [w]ho has the

18  second trustee [sic] on your house[.] As your know[,] tmr u will get the 'Notice of

19  Sale[.]' I would like to speak to you today to see if you would like to facilitate a

20  different plan then [sic] u have .. I will call you in about an hour .. I wanted to give

21  you a polite message just to inform you .! [sic]"

22        40.    On January 20, 2021, Andry telephoned Plaintiff. During this phone

23  call, Andry portrayed himself as trying to help people and then attempted to bring in

24  Ehlert on a conference call. Plaintiff advised Andry that he had retained counsel.

25        41.    On January 21, 2021, Plaintiff and Andry spoke over the phone. During

26  this phone call, Andry told Plaintiff that no one could save his home and that there

27  are no laws in place for second-lien holders, which allow those lien holders to

28  essentially do whatever they want. This was true, Andry added, despite what

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

1  Plaintiff's attorneys may represent to Plaintiff. Andry further stated that even

2  bankruptcy would not save Plaintiff's home—Andry will still get it.

3        42.    Plaintiff filed the Original Complaint, (Dkt. No. 1), on January 22, 2021.

4        43.    On January 22, 2021, Attorney Robert Green emailed a copy of the

5  Original Complaint and a Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(5) and

6  (6) to Nakano and Loria at chris@ashwoodltd.com. Green specifically referenced

7  Nakano's prior response to Plaintiff, including the response's accompanying

8  documents, such as the "Payoff Demand" and payment spreadsheet provided by

9  Ashwood. (*See* Exhs. C and D, incorporated by reference.) Green thoroughly

10  explained to Nakano and Loria that the notes and deeds of trusts were invalid and

11  incorrect due to multiple violations of HOEPA and a calculation error. (*See* Exh. E,

12  incorporated by reference.) The HOEPA violations being an invalid "late fee" of

13  10%, which exceeded the 4% ceiling; a prohibited "default rate"; and a prohibited

14  "expired note rate." (*See* Exh. E, ¶¶ 3-4.) The calculation error resulted from the

15  imposition of a default rate at 34.5%, when the contract unequivocally limited a (still

16  unlawful) rate of 28.5%. (*See* Exh. E, ¶ 5, Lines 4-6.) Pursuant to 12 C.F.R.

17  § 1024.35(e)(3)(i)(A), Nakano (Life Is Amazing) was obligated to respond within

18  "seven days," excluding weekends. Specifically, Nakano (Life Is Amazing), pursuant

19  to 12 C.F.R. § 1024.35(e)(1)(i)(A), was required to correct the errors and provide

20  Plaintiff with "written notification of the correction," among other requirements.

21  Nakano (Life Is Amazing) was further required, pursuant to 12 C.F.R.

22  § 1024.35(e)(1)(ii), to "correct all such additional errors [he knew of or may find]

23  and provide borrower with a written notification" of any corrective action. Nakano

24  and Life Is Amazing failed to satisfy any of the applicable 12 C.F.R. § 1024.35

25  requirements thereafter.

26        44.    On January 28, 2021, Ashwood, through Loria, and on behalf of Life Is

27  Amazing recorded and served Plaintiff with a Notice of Trustee's Sale. Loria and

28  Ashwood were again obligated under California Civil Code § 2924.17(a) to ensure

the recorded document was "accurate and complete and supported by competent and reliable evidence" as a neutral dual-agent for *both* parties.

45.    Despite being notified of multiple HOEPA violations rendering the loan invalid and a calculation error in the final total, Loria and Ashwood never once paused foreclosure proceedings.

46.    Aside from the January 22, 2021, Green email, Loria and Ashwood were aware of and had the material necessary to independently verify the HOEPA violations and the calculation error. From September 4, 2020, through the present, Loria and Ashwood possessed and reviewed loan documents that demonstrated and included the balloon payment and the prohibited late fee, default rate, and expired note rate, for example. (*See* Exhs. C and D.) Loria and Ashwood also independently possessed information necessary to conclude the loan fell within the scope of HOEPA. Loria emailed Plaintiff a copy of the Substitution of Trustee on September 22, 2020, specifically identifying Michael Soon and Associates, the "broker" on the loan documents, as the substituted party. The same substitution occurred two months earlier in the 2019 Nonparty Loan, as well as in the 2018-01 Nonparty Loan. Further, the loan documents included terms clearly identifying the use of a broker, including Soon's broker's license number. Loria and Ashwood knew and/or reasonably should have known the Property was Plaintiff's home at which he resided, as Plaintiff: (i) was a "single man, whose address is presently" the Property per the note; (ii) was significantly in default; and (iii) repeatedly expressed concerns with and interest in the process through emails he sent directly to Loria in September 2020. Finally, the HOEPA violations and mathematical error were clear on the face of the "Payoff Demand" and loan agreement. In fact, the *only* addenda attached to the 2019 note pertained to the "default rate," which expressly stated "equal to the *lesser* of TWENTY EIGHT AND A HALF percent (28.500%) per annum or the maximum interest rate which may be collected . . . under applicable law." (Emphasis added.)

-13-

Neither Loria nor Ashwood contacted Green or Plaintiff for additional information about, or clarification of, the claimed HOEPA violations or the mathematical error.

47.    Ashwood, through Loria and McFarlin LLP, had many other reasons to suspect a problem with the validity of the loan. The "fee worksheet" and HUD "settlement statement," among other loan documents, do not identify a lender. The "lender" section is empty, yet a specific loan was identified—$225,000—along with loan terms. Life Is Amazing is mentioned nowhere. Further, the "Borrowers' Certification and Authorization" form states *only* "Mike Soon and Associates" as the party Plaintiff "applied for a mortgage loan through." In the escrow documents— "Borrower(s) Estimated Closing Statement," "Amended/Additional Escrow Instructions," "Refinance Escrow Instructions," and "Borrower(s) Final Closing Statement"—Life Is Amazing is not mentioned once as a party to the loan. (*See* Exhs. F, G, H, I, incorporated by reference.) As was the case with Plaintiff's first loan, Michael Soon and Associates is the *only* listed party, including as the lender.

48.    ***Per Ashwood's*** (Loria) September 9 and October 21, 2020 NODs, the Deed of Trust (***dated*** March 6, 2019), which ***listed Life Is Amazing as the beneficiary***, was recorded on March 27, 2019, (*see* Exhs. J and K, incorporated by reference); however, Michael Soon and Associates assigned a "beneficiary" interest to Life Is Amazing on March 15, 2019, (*see* Exh. L, incorporated by reference). Meaning, none of the financial documents match the March 6, 2019, Deed of Trust, a fact that should have raised significant red flags, especially because the March 15, 2019 "reconveyance" referred to an instrument "recorded on OCTOBER 22, 2018." (*Id*.) A review of the October 22, 2018, instrument reveals that Life Is Amazing was the beneficiary, not Michael Soon and Associates. (*See* Exh. A.) In other words, *none* of the financial documents match the deeds of trust in this case. Loria and Ashwood also served as the foreclosing entity in the 2018-01 Nonparty Loan, where, same as here, the lending institution identified in the escrow and financial documents was different than Life Is Amazing, with no assignment.

-14-

49.    As to McFarlin LLP, when Plaintiff requested "A complete and itemized statement of the escrow for this account," Nakano responded, "This loan does not have an escrow account." Nakano and McFarlin LLP never provided the escrow packet to Plaintiff. Nakano further represented to Plaintiff, no less than two times, the "Payoff Demand" by Life Is Amazing as being based on a mathematically incorrect 34.5% default rate. (*See* Exhs. C and D.)

50.    Stonegate Escrow facilitated escrow in both the first and second loans and E. Alex Dominguez was the escrow officer for both matters.

51.    On January 29, 2021, Plaintiff attempted to serve Life Is Amazing with a copy of the complaint at the 4209 Seashore Drive address. Plaintiff's process serviccer spoke with a male occupant of the address over a camera doorbell system who stated that he has never heard of Life Is Amazing. This address was and/or is used by no less than seven (7) businesses, owned, operated, and/or managed by Andry, including Life Is Amazing. This is the same address Plaintiff mailed mortgage payment checks to.

C.   **Similar Incidents Involving Defendants**

52.    <u>In the 2018-01 Nonparty Loan</u>, Life Is Amazing extended a mortgage loan to a borrower whose property was her principal dwelling and served as security. The loan operated as a second lien. The Truth-In-Lending Disclosure Statement, prepared by Michael Soon and Associates, provided for: (i) $43,990.95 as the amount financed; (ii) a nine-month loan; (iii) annual percentage rate of 44.817%; (iv) finance charge of $18,304.82; (v) the amount owed after the nine-month period being $56,599.53, not including monthly payments. The monthly payments were interest only at 14.99% and, upon expiration of the nine-month loan, borrower was obligated to make a balloon payment. The loan included a prepayment penalty. The note also included a default rate addendum that is identical to the addendum provided to Plaintiff in connection with both loans at issue.

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

53.    Prior to obtaining the loan, borrower never completed the asset nor income and expenses sections of her loan application. Life Is Amazing never provided pre-loan counseling nor determined the borrower's ability to repay the loan.

54.    Borrower arranged the loan through Jehoshua Shapiro, d.b.a. emortgages. The loan offered through Mr. Shapiro in the second loan application was dramatically different than what was originally represented at the time borrower submitted the first loan application. The first loan application identified emortgages as the origination company. The second loan application, completed in October 2018, four months after the first loan application, substituted Michael Soon and Associates as the origination company, without borrower's prior knowledge. Additionally, the first and second loan representations differed in the following ways: (i) 11% versus 14.99% monthly-interest rate; (ii) $45,000 versus $56,000 borrowed; (iii) 36-month term versus a 9-month term; and (iv) no finance costs versus $18,304.82. The terms of the second loan application served as the basis of the October 2018 note, whereby Life Is Amazing is and was the lender.

55.    During escrow, conducted by Stonegate Escrow, the broker, Michael Soon and Associates, was substituted for Eagle Pacific Financial, LLC ("EPF"), without borrower's prior knowledge. The "Borrower's Final Closing Statement" further represented EPF as the lender, instead of Life Is Amazing, also without borrower's prior knowledge. Life Is Amazing and Michael Soon and Associates did not appear anywhere on the document. Life Is Amazing and Michael Soon and Associates remained on the note and deed of trust.

56.    At the beginning of the loan term, Ehlert contacted borrower. Ehlert stated that he was the manager of Life Is Amazing and that borrower should pay the monthly mortgage payments directly to him, as opposed to Life Is Amazing. Borrower did not do so.

57.    Ehlert further promised to obtain a new loan or help the borrower obtain a new loan to refinance the existing bridge loan. Ehlert never did so.

-16-

58.     Ehlert repeatedly threatened borrower with foreclosure.

59.     Borrower filed for bankruptcy in January 2021. Life Is Amazing filed a claim for $98,399.48. McFarlin represented Life Is Amazing from January 2021 through on or about June 9, 2021. McFarlin initially represented the borrower but is not currently doing so.

60.     In the 2018-02 Nonparty Loan, borrowers obtained a bridge loan from Life Is Amazing, secured by out-of-state property. The original grant deed was recorded in September 2018. Andry, who represented himself as the managing member, personally arranged the loan with the borrowers. No other person is known to have been involved or acted on behalf of Life Is Amazing in the negotiations.

61.     In the 2019 Nonparty Loan, borrowers obtained a bridge loan from Life Is Amazing, secured by property in Los Angeles County. The grant deed was recorded on or about October 23, 2019. Every signature on behalf of Life Is Amazing and any accompanying notary signature were performed by Andry or Ehlert. No other individual beside Andry acted on behalf of Life Is Amazing during this transaction.

## IV     DEFENDANTS' FINANCIAL FRAUD MACHINE

62.     Plaintiff incorporates by reference each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

63.     To maximize profits, Defendants, in early 2018 and thereafter, orchestrated a complex scheme involving a ground-level operative, business front, moneyman, name-only broker, financial enforcer, and legal cover. The scheme was designed to: (i) find vulnerable, unsuspecting property owners in need of quick money; (ii) gain the trust of the property owners through fraudulent or negligent promises and/or representations; (iii) impose unlawful and financially onerous terms on the property owners in the form of loan agreements in order to financially trap the property owners; (iv) extract any and all financial resources from the property owners, utilizing any means possible for as long as possible; (v) if necessary,

-17-

foreclose on the loan and sell the property to extract the remaining resources or threaten as much to leverage the property owner back to (iv); and (vi) if, at any point, legal issues or concerns were raised, or the appearance of lawfulness was needed, utilize legal cover. The machine had and has no definable end; rather, once the machine found a target or multiple targets, it continued as long as the ruse could be maintained and the money flowed. Then it moved on to its next victim.

A.    **Plaintiff Was Directly and Proximately Harmed as A Result of Defendants and Participants' Unlawful Acts in Furtherance of the Scheme**

64.    Plaintiff was wrongfully deprived of tens of thousands of dollars through mortgage payments. Plaintiff was further harmed by Defendants' failure to satisfy the various promises made, causing Plaintiff to forego lawful alternatives, such as a lawyer or legitimate bridge-loan lender. The Defendants' further exacerbated Plaintiff's harm by utilizing the existing COVID-19 pandemic to their advantage, with knowledge that housing and rental prices were likely to increase as market availability shrank. Plaintiff would not have entered into either transaction with Defendants had he known of Defendants' unlawful scheme to entrap him in an inescapable foreclosure loop.

65.    Plaintiff suffered severe emotional distress resulting from Defendants' extreme and outrageous conduct. Specifically, Plaintiff's severe emotional distress resulted in, but is not limited to, loss of sleep, loss of appetite, anger, anxiety, and stress, to an extent that a reasonable person in Plaintiff's position would be unable to cope. Defendants intended to cause, and/or knew and/or reasonably should have known their acts would cause, Plaintiff to suffer such injuries. Defendants' conduct was so reprehensible, offensive, and indifferent to Plaintiff's rights as to justify the imposition of punitive damages, in addition to any compensatory damages.

66.    Plaintiff is a direct victim and, in the present case, no other victim can be counted on to vindicate the law. Plaintiff's damages are financial, to a significant

degree, and will not be difficult to ascertain. There will be no need for this Court to adopt complicated rules apportioning damages.

B.    **The Components of the Scheme (Enterprise, Associated-in-Fact)**

67.    Ehlert, Soon, Life Is Amazing, Andry, Ashwood, and McFarlin LLP each served a critical role in the scheme. But for this Court's Preliminary Injunction, Defendants' acts in furtherance of the scheme *in this case* would have continued. Defendants' acts in furtherance of their general scheme also continue outside this case. Defendants each understand and act in such a way as to further each other's roles in the scheme.

68.    Ground-Level Operative: Ehlert's role, as a highly experienced, yet unlicensed, real estate player was to vet the targets and/or gain their trust. Ehlert played his role well and served as a necessary component. After a short period of time and numerous communications, Ehlert gained Plaintiff's trust through Ehlert's claimed connections, knowledge of real estate, and/or promises to eliminate the FTB lien and obtain a new conventional loan for Plaintiff. Ehlert acted in the same fashion with the 2018-01 Nonparty Loan victim. Ehlert was also utilized to perform notary services and other acts as the "servicer" in order to distance the business front, Life Is Amazing, and the moneyman and create the appearance of impartiality. This was true not only in the present matter, but also in the 2018-01 and 2019 Nonparty Loans.

69.    Business Front: Life Is Amazing served as a fictitious front to create the appearance of legitimacy, an important component of the scheme. Life Is Amazing's claimed address is merely a three-story residence. To preserve the front, the Defendants removed Life Is Amazing from financial documents in this case, including Truth-in-Lending Disclosure Statements, Fees Worksheets, HUD Settlement Statements, and escrow documents. The same was done in the 2018-01 Nonparty Loan. The importance of the front's low profile and distance from the unlawful activity further ensured a steady channel by which the enterprise could maintain the inflow of money from their targets.

-19-

70.    <u>Moneyman:</u> Andry was the moneyman and, at times, the face of the business front, if needed. The scheme was impossible without Andry's wealth. (*See* https://privateloanfinancial.com/about-us/our-team/, last visited on July 14, 2021.) In addition to Plaintiff's $225,000 loan, "Life Is Amazing loaned" in excess of two million dollars over 2018 and 2019, just based on the 2018-01, 2018-02, 2019 Nonparty Loans, and deeds of trust identified through a search of San Diego County's Public Records (without considering California's remaining counties). Ehlert could not have contributed to the scheme, as he filed for Chapter 13 bankruptcy in 2017, shortly before the scheme began. (*See* Case No. 1:17-BK-10095, filed in Central District of California.) Soon also experienced financial difficulties in 2011 and before, including a judgement against him in the amount of $721,000. As each cog in the machine served their respective purpose, Andry's purpose was also as the seemingly independent public anchor behind Life Is Amazing.

71.    <u>Name-Only Broker:</u> Soon, being the most experienced real estate player of the group and the only cog with a broker's license, was also indispensable. The appearance of a transaction initiated by a broker opened doors otherwise unavailable, and disguised the unlawfulness of the scheme behind a veneer of respectability. *See e.g.,* Cal. Const., Art. XV, § 1; Cal. Civ. Code §§ 1916-1, 1916-2, 2945.1(b)(7) and (b)(9); Cal. Fin. Code § 50002(c)(9). Further, Soon has used Michael Soon and Associates as a d.b.a. for decades, at least since he was disciplined in 1995 for permitting an unlicensed employee to engage in real estate services that required a broker's license under California law. In that matter, Soon also utilized Michael Soon and Associates. Yet, Michael Soon and Associates, and all iterations, has never been registered in California according to the California Secretary of State's business search website. Much like reducing the footprint of Life Is Amazing, the group's use of a *nom de guerre* creates another layer of obfuscation to hide Defendants' unlawful conduct. Defendants also used this unlawful tool in the 2018-01 Nonparty Loan, purging every trace of their activity from the financial documents. As such, when all

-20-

financial documents are stripped of Life Is Amazing, as is the case here, and replaced with the d.b.a. Michael Soon and Associates, the moneyman and business front are further protected and the underlying broker's license is insulated.

72.    <u>Financial Enforcer:</u> Ashwood, through Loria, was the stick to Ehlert's carrot. As with every other cog, Ashwood was indispensable in that it allowed the continued extraction of money and, if the well dried up, the evacuation of resources. For nearly every individual who has experienced default and/or foreclosure proceedings, they, by definition, are in financial straits. And most have no understanding at all about the process or their rights. *See* Cal. Civ. Code § 2945. Defendants took, and continue to take advantage. Ashwood, as a seemingly independent company, provided the appearance of neutrality during the foreclosure process. Further, Loria, who has been operating in the foreclosure market for decades, brought significant experience to the table. In this case, Ashwood's role played out exactly as orchestrated, such that when it was clear Plaintiff caught on to the ruse, Loria and Ashwood began the evacuation plan, despite clear notice the loan was unlawful. But for the Preliminary Injunction, Ashwood, on behalf of the group, would have successfully furthered the scheme. Ashwood served the same purpose in the 2018-01 Nonparty Loan as well.

73.    <u>Legal Cover:</u> The final, indispensable component is McFarlin LLP, the legal cover. The legal cover served several purposes. First, it allowed for the machine to portray its acts as lawful, such as when Nakano scolded Plaintiff, stating "It is surprising that you are questioning the validity of the loan you have with us, because you executed loan documents and signed a Deed of Trust before a notary public." Nakano's use of the word "us," rather than my client(s) or Life Is Amazing, says a thousand words. Second, the legal cover creates the potentially advantageous situation of representing the cogs *and* the victim, as was originally the case in the 2018-01 Nonparty Loan. In fact, McFarlin attempted to do exactly that in this case when he sent Plaintiff the misleading notification and attempted, through the "Hope

Foundation," to secure Plaintiff as a client at the same time as he was working with

and representing the other Defendants. Defendants surely use McFarlin as a cover to

try to protect their communications with each other. And finally, the legal cover

serves as a mechanism to assess the impending danger posed to the scheme. As none

of the other cogs are lawyers, someone must be capable of maneuvering the scheme

through the legal field and avoid exposure should a victim try to protect himself or

herself.

<h1 style="text-align:center">V    THEORIES OF VICARIOUS LIABILITY</h1>

**A.    Defendants and Participants Aided and Abetted Each Other**

74.    Plaintiff incorporates by reference each and every allegation of the

preceding paragraphs, with the same force and effect as though fully set forth herein.

75.    Soon owed Plaintiff fiduciary duties as the purported broker. Ehlert, and

through his acts, Life Is Amazing and Andry, owed Plaintiff fiduciary duties. At all

relevant times herein, Ehlert and Life Is Amazing acted as a mortgage broker and

assumed the accompanying duties. Further, as Life Is Amazing is a company that

must act through its employees, Andry, who did act on behalf of Life Is Amazing,

owed Plaintiff the same fiduciary duties. Ashwood, through Loria, and Andry had

knowledge of and/or reasonably should have known that Ehlert and Life Is Amazing

assumed those duties at the time it filed the NODs and Notice of Trustee's Sale. The

same is true of McFarlin LLP.

76.    Ashwood (through Loria) exceeded the scope of its traditional role as a

trustee and assumed the corresponding duties owed to Plaintiff by Life Is Amazing

and Andry. Specifically, Ashwood failed to act as a neutral dual-agent for Life Is

Amazing and Plaintiff. Rather, Ashwood acted solely on behalf of Life Is Amazing.

At all relevant times, Ashwood acted with malice, in that it intentionally and/or

recklessly acted with complete disregard of Plaintiff's financial wellbeing, interests,

and rights.

77. As alleged above, Andry also independently exceeded the scope of his role and duties as the officer of Life Is Amazing.

78. Each Defendant further owed a duty to Plaintiff not to injure his property or infringe on his rights pursuant to California Civil Code § 1708.

79. Each Defendant respectively aided and abetted numerous breaches of fiduciary duties. Each respective unlawful act—violations of HOEPA, fraud, violations of California's Usury law, violations of California's Unfair Competition Law, and negligent misrepresentation—constituted a breach of those fiduciary duties. Each Defendant knew and/or reasonably should have known of the respective breach of fiduciary duties.

80. Additionally, and/or alternatively, Andry and Life Is Amazing owed Plaintiff a duty of care under California Civil Code § 2924.17 upon recordation of the substitution of trustee and when they caused all subsequent foreclosure documents to be recorded. Ehlert and Ashwood (through Loria) knew and/or reasonably should have known Andry and Life Is Amazing owed this duty of care to Plaintiff. Ehlert and Ashwood also knew and/or reasonably should have known that Andry and Life Is Amazing violated this duty of care by causing the substitution of trustee to be recorded, with the intent to unlawfully initiate foreclosure proceedings against Plaintiff, based on the patently unlawful March 2019 loan and the negligent misrepresentation therein.

81. Each Defendant provided substantial assistance and/or encouragement in furtherance of unlawful acts. The following acts are not exhaustive.

  a. Ehlert assisted and/or encouraged when he: (i) notarized official documents needed to further the group's scheme; (ii) caused Life Is Amazing and/or Andry to implement the unlawful loans; (iii) intentionally misrepresented the scheme's true purpose; and (iv) concealed the scheme's true purpose.

b. <u>Soon</u> assisted and/or encouraged when he: (i) allowed and/or directed Ehlert to assume mortgage broker responsibilities; (ii) allowed and/or directed the use of Michael Soon and Associates to be used in place of Life Is Amazing on financial documents; (iii) furthered the implementation of the unlawful loans; and (iv) allowed repeated use of his broker's license for the unlawful scheme.

c. <u>Life Is Amazing</u> assisted and/or encouraged when it: (i) implemented the unlawful loans; (ii) altered and/or permitted financial documents to be altered to conceal the scheme's true purpose; (iii) forwarded the unlawful loan documents to Ashwood; and (iv) directed Ashwood to initiate foreclosure proceedings.

d. <u>Andry</u> assisted and/or encouraged when he: (i) allowed and/or directed Life Is Amazing's financial resources to be used for an unlawful purpose; (ii) allowed and/or directed the concealment of Life Is Amazing's identity from all and/or most financial documents; (iii) signed and recorded the substitution of trustee; and (iv) caused and/or directed Ashwood to initiate foreclosure proceedings.

e. <u>Ashwood</u> assisted and/or encouraged when it: (i) recorded official documents it knew and/or reasonably should have known were based on an unlawful loan and/or recordings; (ii) chose not to pause foreclosure proceedings upon being notified of the unlawfulness and/or incorrect final total of the March 2019 loan; (iii) attempted to initiate sale of Plaintiff's property; and (iv) concealed the unlawful nature of the March 2019 loan and/or overall scheme.

-24-

f.  <u>McFarlin LLP</u> assisted and/or encouraged when it: (i) represented the patently unlawful March 2019 loan as legitimate; (ii) refused to correct the mathematical error in the final total and/or the unlawful components of the March 2019 loan; and (iii) concealed its role in, and fraudulent acts of, the scheme when communicating with Plaintiff and/or attempting to discourage Plaintiff from moving forward.

82.  As alleged above, the unlawful acts were a substantial factor in causing harm to Plaintiff.

B.  **Defendants Acted in Concert**

83.  Plaintiff incorporates by reference each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

84.  Alternatively, and/or additionally, each respective Defendant acted in concert with one or more defendant or participant in furtherance of the scheme or a component of the scheme. In addition to providing substantial assistance and/or encouragement to another in breach of that person's fiduciary or other duty, Defendants committed tortious acts in concert with another Defendant pursuant to a common design with that person(s). In addition to the allegations alleged herein, Ashwood negligently misrepresented the final total of the March 2019 loan in furtherance of the identified scheme. Ashwood knew and/or reasonably should have known of the identified scheme and/or Andry and Life Is Amazing's intent to press forward with the unlawful loan with complete disregard of the patent violations of law and misrepresentation.

85.  As alleged above, Ashwood acted with malice at all relevant times.

C.  **Life Is Amazing Is Liable Under the Doctrine of Respondeat Superior**

86.  Plaintiff incorporates by reference each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

87.    Theory of liability under this doctrine is alleged additionally and/or alternatively.

88.    At all relevant times herein, Ehlert and Andry were employees of Life Is Amazing and acted within the course and scope of that employment and their corresponding duties. Ehlert and Andry's conduct sought to further not only their financial interest, but also that of Life Is Amazing. Life Is Amazing benefited from Ehlert and Andry's unlawful acts in the following ways: (i) received mortgage payments from Plaintiff amounting to tens of thousands of dollars; and (ii) received a legal right to the note and deed of trust to Plaintiff's property. Life Is Amazing is not a victim; rather, Life Is Amazing is an unlawful actor that allowed, concealed, and/or knowingly cooperated with the unlawful acts.

**D.    Defendants Conspired to Commit Unlawful Acts**

89.    Plaintiff incorporates by reference each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

90.    Each Defendant and respective Participant of the scheme agreed to, and in many respects did, commit acts that, if completed, amounted to violations of the unlawful (predicate) acts alleged herein. These unlawful (predicate) acts are well in excess of two.

91.    The Defendants' agreements were express and/or implied as can be inferred from the totality of Plaintiff's allegations. Even if the agreements were not express and/or implied, Defendants adopted the goal of furthering and/or facilitating the unlawful behavior of other Defendants and/or Participants of the scheme. Regardless of whether each Defendant knew of the exact details of the respective components of the scheme, Defendants as a group shared the common objective and goal of the conspiracy.

92.    Each Defendant owed Plaintiff a duty. Ehlert, Soon, Life Is Amazing, and Andry owed Plaintiff fiduciary duties. Andry and Life Is Amazing further owed Plaintiff a duty of care. Ashwood (through Loria) exceeded the scope of its

-26-

traditional role as a trustee and assumed the corresponding duties owed to Plaintiff by Life Is Amazing and Andry. As alleged above, Ashwood acted with malice at all relevant times.

93.    Each Defendant stood to financially gain from their acts in furtherance of the scheme. The financial gain being in the form of additional money from Plaintiff, the acquisition of Plaintiff's home, and/or future business for the successful handling of their respective role.

94.    Defendants' liabilities are the same, as each Defendant shares liability for the acts of every other defendant/participant-coconspirator in furtherance of the common plan or design, regardless of whether the unlawful act occurred before or after the date that Defendant entered the conspiracy.

# VI    CAUSES OF ACTION
## COUNT I
## VIOLATION OF THE HOME OWNERSHIP
## AND EQUITY PROTECTION ACT ("HOEPA")
## (15 U.S.C. §§ 1639, et seq.)
## (As to all Defendants)

95.    Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

96.    The October 2018 Note and Trust Deed transaction constitutes a high-cost mortgage as defined in 15 U.S.C. § 1602(bb) in that it was a consumer credit transaction secured by Plaintiff's principal dwelling and, among other things, the points paid of $37,500 equal 15% of the transaction amount of $250,000.

97.    The March 2019 Note and Trust Deed transaction constitutes a high-cost mortgage as defined in 15 U.S.C. § 1602(bb)(1)(A) and 12 C.F.R. § 1026.32(a)(1) in that it was a consumer credit transaction secured by Plaintiff's principal dwelling

1  and, among other things, the points and fees of at least $18,221.84 equal over 8% of
2  the $206,778 Amount Financed.

3      98.    Life Is Amazing is a creditor as defined in 15 U.S.C. § 1602(g) and 12
4  C.F.R. § 1026.2(17)(i) and (v) in that it is the entity to whom the above obligations
5  are owed on the face of the notes and it originated these two transactions within a 12-
6  month period or at least one such transaction which purported to be made through a
7  mortgage broker.

8      99.    Soon, Andry, and Ehlert acted as mortgage/loan originators in
9  connection with the above transactions in that they are persons who for direct or
10  indirect compensation or gain took the subject residential mortgage loan applications,
11  assisted Plaintiff in obtaining or applying to obtain the subject residential mortgage
12  loan applications, or offered or negotiated terms of the subject residential mortgage
13  loans.

14     100.   Soon, Andry, Ehlert, and Life Is Amazing knew and or reasonably
15  should have known that it would be necessary to obtain a new loan to pay off each of
16  the subject residential mortgage loans and that the FTB lien would likely make that
17  impossible. It is common practice and/or required to obtain a title history before
18  initiating a new loan.

19     101.   Soon, Andry, and Ehlert violated 15 U.S.C. § 1639b(c) (mortgage
20  originator) and 12 C.F.R. § 1026.36(e)(1) (loan originator) by steering Plaintiff into
21  the subject residential mortgage loans where Plaintiff did not have a reasonable
22  ability to pay, particularly considering that the entire balance was due in six months,
23  and the mortgage loans had predatory characteristics, such as excessive fees and
24  interest and abusive terms.

25     102.   Life Is Amazing violated 15 U.S.C. § 1639c(a)(1) (creditor) by failing to
26  make a reasonable and good faith determination based on documented evidence that
27  Plaintiff could repay either of the subject residential mortgage loans and, in
28  particular, did not determine the ability of Plaintiff to repay using a payment schedule

-28-

that fully amortized the loans over the six-month terms of the loans. No one inquired about Plaintiff's financial position, nor were his finances examined. Plaintiff's loan applications and other related documents pertaining to Plaintiff's ability to pay were never filled out.

103.    The subject residential mortgage loans violated 15 U.S.C. § 1639 and 12 C.F.R. 1026.32 in the following respects:

      a.    Each of the loans included a prohibited balloon payment that is more than two times a regular periodic payment.

      b.    Each of the loans included a prepayment penalty that were to be imposed for paying all or part of the transaction's principal before the date on which the principal is due.

      c.    Each of the loans included a prohibited increase in the interest rate after default:

          i.    The October 2018 Note and the March 2019 Note state that, "The interest rate will increase by 6% (6 percent) above the interest rate in Section 1, if this note is not paid on or before the due date."

          ii.    The October 2018 Note and the March 2019 Note included a "Default Rate Addendum to Note," which purports to raise the interest rate to 28.5% per annum whenever an event of default has occurred.

          iii.    Attached as Exhibit D is the chart of payments that Ashwood provided to Plaintiff in response to his Qualified Written Request to state the basis of the Notice of Default. The chart Ashwood provided claims that Plaintiff owes the entire principal balance of $225,000, plus monthly interest at the rate of $3,373.13, plus monthly late fees of $337.31, plus a monthly "Default Rate" of $1,970.63, plus a monthly

-29-

"Expired Note Rate" of $1,125, plus $1,937.50 related to filing the Notice of Default. By separately calculating the 6% increase and the increase to 28.5%, Ashwood has double counted the 6%, so that the actual annual percentage based on the monthly charges which Ashwood purports to be in default as shown on Exhibit D is 34.5%.

104.    The subject residential mortgage loans violated 15 U.S.C. § 1639 and 12 C.F.R. § 1026.34 in the following respects:

a.    Each of the loans included a late payment fee of 10%, which exceeds the 4% limitation (for example, the March 2019 note states that, "The amount of the charge will be 10% of the amount overdue or $5.00, whichever is more.")

b.    Each of the loans included a late payment charge after 10 days, which is less than the required 15 days (for example, the March 2019 note states, "If the Note Holder has not received the full amount of any of my monthly payments by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder.")

c.    Each of the loans were issued without compliance with any of the requirements of pre-loan counseling.

d.    The March 2019 high-cost mortgage loan was extended within less than one year of the date on which the October 2018 high-cost mortgage was extended without being in the Plaintiff's interest and Plaintiff was charged fees to renew, including a "loan origination fee" of $10,000, an "underwriting fee" of $1,495, and other similar fees.

e.    The October 2018 high-cost mortgage loan financed the points and fees by paying them from the loan proceeds.

-30-

105.   Plaintiff, as a residential mortgage loan consumer, had a reasonable expectation that Defendants would (a) act in compliance with applicable federal laws, and (b) not steer Plaintiff into loans which Plaintiff lacked the reasonable ability to repay (in accordance with 15 U.S.C. § 1639c(a)), which contained predatory characteristics or effects (such as excessive fees or abusive terms), or which would strip Plaintiff of equity or title to the Property.

106.   Plaintiff detrimentally relied on Defendants' violations of HOEPA such that it caused him damage. In particular, had Ehlert, Soon, Life Is Amazing, and/or Andry determined Plaintiff's ability (or lack thereof) to pay the high-cost mortgages and required Plaintiff to participate in the required counseling, Plaintiff would not have entered into the loans in the first place and would have foregone the loans altogether or would have obtained less costly loans. Defendants used the false representations that they were fiduciaries seeking to put Plaintiff into the best situation possible and that they would be able to replace the six month loans with more conventional financing to cause Plaintiff to disregard his other options, and to look past the extreme and abusive terms of the subject loans, such as an APR of 31.647% and penalty rates upon which Defendants rely to claim over 34.5%, increased from the initial 17.99%.

107.   As alleged above, Defendants, in a concerted fashion, aided and abetted and/or conspired to violate HOEPA as alleged herein, or are liable as coconspirators.

108.   Defendants' violations of HOEPA entitle Plaintiff to rescission.

109.   Defendants' conduct was oppressive, fraudulent, and malicious pursuant to California Civil Code § 3294. The respective breaches of the identified obligations were intended to, and did, cause Plaintiff injury and/or were outrageous in that the Defendants' acts were done with willful and conscious disregard of Plaintiff's rights and safety. The failures to disclose, concealments, and intentional misrepresentations of material facts, along with other forms of deceit, further subjected Plaintiff to cruel and unjust hardship, injury to his property, and deprivation of his legal rights,

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

1    justifying an award of exemplary and punitive damages in an amount to be

2    determined at trial. Life Is Amazing and Ashwood, in their capacity as an employer,

3    authorized and/or ratified the unlawful and outrageous conduct of their employee(s).

**COUNT II**

**FRAUD**

**(Under California Law)**

**(As to all Defendants)**

110.    Plaintiff incorporates by reference each and every allegation of the
preceding paragraphs, with the same force and effect as though fully set forth herein.

111.    Pursuant to California Civil Code § 1572, "Actual fraud . . . consists in
any of the following acts, committed by a party to the contract, or with his
connivance, with intent to deceive another party thereto, or to induce him to enter
into the contract: . . . (1) The suggestion, as a fact, of that which is not true, by one
who does not believe it to be true; (2) The positive assertion, in a manner not
warranted by the information of the person making it, of that which is not true,
though he believes it to be true; (3) The suppression of that which is true, by one
having knowledge or belief of the fact; (4) A promise made without any intention of
performing it; or, (5) Any other act fitted to deceive."

112.    At all relevant times, each Defendant owed Plaintiff fiduciary duties
and/or a duty of care as set forth above.

113.    Ehlert represented that his associate would be able to remove the FTB
lien and arrange conventional replacement financing by the due date of the first note
and trust deed. Ehlert again represented that he would be able to do so by the October
1, 2020, due date of the second note and trust deed. Ehlert did not believe these facts
to be true, or did believe them to be true, but made the assertions to induce Plaintiff
into the loan transaction. Moreover, Ehlert made these promises without any
intention of performing them. Ehlert intended that Plaintiff rely on the
representations.

-32-

114.    Defendants possessed exclusive knowledge and/or actively concealed one or more of the following acts: (i) the details of the unlawful scheme, including the use of a name-only broker; (ii) that the representations as to the FTB lien and conventional lending were unintended; (iii) the respective loans were unlawful and/or mathematically incorrect; (iv) the manner in which the loans were handled was deceptive and/or unlawful (e.g., purging Life Is Amazing's name from financial documents); (v) the relationships of the Defendants and Participants in the scheme; and (vi) the manner in which the loan documents were recorded was deceptive and/or unlawful. None of the Defendants, at any time, disclosed any of the identified material information to Plaintiff. Defendants knew and/or reasonably should have known this material information would have been, and was, relied on by Plaintiff.

115.    In reliance on Defendants' representations, reassurances, and/or false demonstration of neutrality, Plaintiff signed the notes and trust deeds. In addition, Plaintiff continued to act in reliance by not acting to stem the bleeding earlier than he did. Plaintiff would not have entered in either transaction had he known of any of this material information. Further, every neglected opportunity to disclose the material information caused harm to the Plaintiff in the form of additional late payments and expenses claimed by Life Is Amazing that could have been addressed at an earlier time. This harm is in addition to the other harm alleged herein. Plaintiff now faces a pending foreclosure of his home of forty plus years and substantial financial claims as a result of Defendants' acts and omissions.

116.    As alleged above, Defendants, in a concerted fashion, aided and abetted and/or conspired to commit fraud as alleged herein, or are liable as coconspirators.

117.    As alleged above, Defendants' conduct was oppressive, fraudulent, and malicious pursuant to California Civil Code § 3294.

# COUNT III
# BREACH OF FIDUCIARY DUTY
## (Under California Law)
## (As to all Defendants)

118.    Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

119.    Defendant Soon represented and held himself out to Plaintiff as the mortgage broker for both the October 2018 and March 2019 loans. Soon's broker's license was used on numerous documents and his d.b.a., Michael Soon and Associates, was included in virtually every loan and/or financial document. Mortgage brokers owe fiduciary duties to borrowers and must put the borrower's economic interest ahead of their own pursuant to California Civil Code § 2923.1. That fiduciary duty requires the mortgage broker to disclose all material facts to the borrower which may affect the borrower's decision to enter into the loan transaction. Soon abdicated his fiduciary duties, completely, by his intentional and/or reckless act of turning over all lending negotiations, decisions, and implementation to Ehlert, Life Is Amazing, and Andry.

120.    Following Soon's initial conversation with Plaintiff, Ehlert was the only person to communicate with Plaintiff during the lending process. For example, Ehlert made various representations to Plaintiff that he was shopping Plaintiff's loan transaction with various potential lenders and investors, despite his intent to proceed with a loan solely through Life Is Amazing. Ehlert set nearly all terms, including principal, points, and rates. Life Is Amazing and Andry permitted, directed, and/or caused the implementation of Ehlert's representations. In short, Ehlert, Life Is Amazing, and/or Andry communicated with Plaintiff about and/or dictated all terms and conditions of the loans. In doing so, Ehlert, Life Is Amazing, and Andry acted as unlicensed mortgage brokers.

121.   Each Defendant assumed the fiduciary duties of a mortgage broker, directly and/or indirectly. Ehlert, as an agent and employee of Life Is Amazing and Andry, imposed upon each the fiduciary duties accompanying the role of a mortgage broker. For all intents and purposes, Ehlert and Life Is Amazing acted as a single unit in every phase of the lending process. In addition, as Ehlert made clear throughout his interactions with Plaintiff and the victim in the 2018-01 Nonparty Loan, and Andry reinforced in his phone conversation with Plaintiff, Ehlert and Andry also operated as a single unit. Further, as Andry was the sole "manager" for Life Is Amazing, no funds could be agreed to and/or distributed without his involvement. As for Ashwood, by exceeding the scope of a trustee's traditional role, it assumed the same fiduciary responsibilities Life Is Amazing and Andry owed to Plaintiff.

122.   Defendants violated and breached their fiduciary duties of candor, good faith, reasonable inquiry, oversight, and supervision.

123.   Ehlert, Soon, Andry, Life Is Amazing, and Ashwood had actual and/or constructive knowledge that Ehlert made materially false and misleading statements; and/or that the six month notes on the terms provided to Plaintiff were not in his economic interest; and/or of the deceptive and/or unlawful attempts to conceal one or more Defendant's involvement; and/or the loans were issued in violation of the HOEPA and violation of California Predatory Lending Law. Cal. Fin. Code §§ 4970, et seq. Further, every Defendant knew or reasonably should have known of the mathematical error in the final March 2019 total. More important, each knew of and participated in the unlawful scheme. None of the Defendants satisfied their fiduciary responsibilities with respect to these unlawful acts.

124.   Life Is Amazing, Andry, Ehlert, and Ashwood further breached their respective fiduciary duties by causing the filing of the NODs and Notice of Trustee's Sale when they knew and/or reasonably should have known of the unlawful and inaccurate terms of the March 2019 loan and the unlawful purpose of the scheme.

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

125.   As alleged above, Defendants, in a concerted fashion, aided and abetted and/or conspired to breach the fiduciary duties alleged herein, or are liable as coconspirators.

126.   As a direct and proximate result of the Defendants' breaches of their fiduciary obligations, Plaintiff sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, Defendants are liable to Plaintiff.

127.   As alleged above, Defendants' conduct was oppressive, fraudulent, and malicious pursuant to California Civil Code § 3294.

**COUNT IV**

**VIOLATION OF CALIFORNIA USURY LAW**

**(Cal. Const., Art. XV, § 1 and Cal. Civ. Code § 1916-2)**

**(As to all Defendants)**

128.   Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

129.   After the initial call Plaintiff received from Mike Soon in September 2018, all further negotiations and communications regarding the notes in question were conducted by Ehlert and implemented by Life Is Amazing and Andry, who are not licensed in any capacity. With regard to the second note and trust deed, executed in March 2019, which are the subject of the NODs recorded in September and October 2020, all communications and negotiations were between Plaintiff and Ehlert. Soon did not participate in any direct capacity, except to allow his name to be identified on the notes as the broker who arranged the transaction.

130.   As alleged above, Defendants, in a concerted fashion, aided and abetted and/or conspired to violate California's usury laws as alleged herein, or are liable as coconspirators.

131.  Plaintiff has paid Life Is Amazing finance charges in excess of the maximum permissible rate authorized under California Constitution Article XV, Section 1 and California Civil Code § 1916-2.

132.  Plaintiff is entitled to an offset in the amount of the interest payments made from October 2018 through the present against the outstanding principal.

133.  The loans from Life Is Amazing to Plaintiff calls for usurious rates of interest. Under the terms of the notes, Plaintiff did, in fact, pay Life Is Amazing excessive and usurious interest. Andry and Life Is Amazing willfully loaned money to Plaintiff, intending to receive interest payments in excess of legal maximum limits.

134.  As alleged above, Defendants' conduct was oppressive, fraudulent, and malicious pursuant to California Civil Code § 3294.

**COUNT V**

**VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW**

**(Cal. Bus. and Prof. Code § 17200)**

**(As to all Defendants)**

135.  Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

136.  Defendants' conduct violated the unfair, unlawful and fraudulent prongs of California's Unfair Competition Law, Bus. & Prof. Code, §§ 17200, et seq.

137.  The efforts by Ehlert, Soon, Life Is Amazing, and Andry to impose and collect interest in excess of the legally permitted rate, and the origination of the notes and trust deeds through the use of false and misleading statements offends established public policies, and is immoral, unethical, oppressive, unscrupulous or substantially injurious to the public.

138.  Defendants' conduct violated HOEPA, the California Predatory Lending Law under California Financial Code §§ 4970, et seq., California usury law, and

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

California Civil Code § 2924.17, all as alleged above. *See also* Cal. Fin. Code §§ 22753, 22346, 50500, 50503, 50505; Cal. Gov. Code §§ 8214.2, 8225.

139.   Separately, Ashwood violated 15 U.S.C. § 1692g(a) and (b). As alleged above, Plaintiff is a consumer and Ashwood is a debt collector. The March 2019 loan in this case constitutes a debt. Ashwood was required either at the time it recorded the first NOD or during the various email communications it had with Plaintiff in September 2020 to notify Plaintiff of his rights under the FDCPA. Not only was Plaintiff not informed of his rights pursuant to 15 U.S.C. § 1692g(a) and (b) within five days of *any* communication he had with Ashwood in September 2020, but he was directed to cease all communications with Ashwood in early October 2020. Ashwood further violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and/or status of the debt.

140.   As further alleged above, Defendants, in a concerted fashion, aided and abetted and/or conspired to violate California's Unfair Competition Law as alleged herein, or are liable as coconspirators.

141.   Andry and Life Is Amazing continues to engage in unlawful lending practices, such as that identified in the action entitled, *48 Augusta Canyon Way, LLC v. Life Is Amazing, et al.*, Case No. 19SMCV01175, filed on June 27, 2019, in the Los Angeles County Superior Court. Life Is Amazing will continue to extend loans and pursue collection of usurious loans unless enjoined. As a result of these practices, Life Is Amazing has obtained illegal payments of interest from Plaintiff and other debtors, which it should not be permitted to retain. Plaintiff and the general public are entitled to injunctive relief, restitution, and other equitable relief.

142.   As alleged above, Defendants' conduct was oppressive, fraudulent, and malicious pursuant to California Civil Code § 3294.

1

2

3

4

## COUNT VI

## NEGLIGENT MISREPRESENTATION

### (Under California Law)

### (As to all Defendants)

5    143.   Plaintiff incorporates by reference in this cause of action each and every
6  allegation of the preceding paragraphs, with the same force and effect as though fully
7  set forth herein.

8    144.   Defendants owed Plaintiff the duties set forth above.

9    145.   Ehlert, Andry, Life Is Amazing, and Ashwood caused a Notice of
10 Default on the March 2019 Note and Trust Deed secured by Plaintiff's primary
11 residence to be sent to Plaintiff and recorded on October 21, 2021.

12   146.   The Notice of Default stated a payoff amount of over $318,000
13 calculated using the illegal interest rates alleged above.

14   147.   Defendants knew and/or reasonably should have known that the default
15 increases in interest rate are illegal under HOEPA and California usury law.

16   148.   Ehlert, Andry, Life Is Amazing, and Ashwood also knew and/or
17 reasonably should have known that their calculations double-counted 6% of the
18 stated increases by applying a 34.5% annual rate, rather than the maximum rate set
19 forth in the documents of 28.5%.

20   149.   As further alleged above, Defendants, in a concerted fashion, aided and
21 abetted and/or conspired to misrepresent the final total owed from the March 2019
22 loan as alleged herein, or are liable as coconspirators.

23   150.   Plaintiff was harmed through the increase of the final total claimed by
24 Life Is Amazing as to the March 2019 loan. Had Plaintiff known at any earlier time,
25 he would have sought to address this issue earlier.

26   151.   As alleged above, Defendants' conduct was oppressive, fraudulent, and
27 malicious pursuant to California Civil Code § § 3294.

28

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

# VII    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for judgment against Defendants, and each of them as follows:

1.    That the Court order judgment declaring the rights and obligations of Plaintiff and Defendants;

2.    That the Court enjoin Ashwood from conducting a foreclosure sale of the Property;

3.    That the Court order judgment declaring the stated interest rate in the promissory note is in violation of California Constitution Article XV, Section 1 and California Civil Code § 1916-2;

4.    That the Court order judgment for damages and statutory damages in an amount to be proven at trial;

5.    That the Court order Defendants to restore to Plaintiff all amounts collected by Defendants by means of any practices deemed by this Court to be illegal or unfair, or otherwise prohibited by law;

6.    That the Court enjoin Defendants from foreclosing on the Property or seeking to collect or institute any legal or equitable action or proceeding to collect any interest or purported fees due under the promissory note from Plaintiff;

7.    That the Court award Plaintiff pre-judgment and post-judgment interest on all of the above;

8.    That the Court award Plaintiff attorneys' fees and costs of suit; and

9.    For such other and further relief as this Court deems just and proper.

Dated: July 29, 2021                    Respectfully Submitted,

                                        */s/ David C. Wright*
                                        David C. Wright

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx

# DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on any and all counts for which trial by jury is permitted.

Dated: July 29, 2021                    Respectfully Submitted,

/s/ David C. Wright
David C. Wright

Richard D. McCune (SBN 132124)
rdm@mccunewright.com
David C. Wright (SBN 177468)
dcw@mccunewright.com
James G. Perry (SBN 281356)
jgp@mccunewright.com
Steve A. Haskins (SBN 238865)
sah@mccunewright.com
Sandy G. Gonzalez (SBN 330541)
sgg@mccunewright.com

*Counsel for Plaintiff Richard Pallack*

First Amended Complaint for Damages and Demand for Jury Trial
Case No.: 8:21-cv-00139-JLS-KESx